IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THE WOLK LAW FIRM,            : CIVIL ACTION
DON GOLDSTEIN, and            : NO. 16-05632
INGRID GOLDSTEIN,            :
                             :
     Plaintiffs,             :
                             :
v.                           :
                             :
UNITED STATES OF AMERICA      :
NATIONAL TRANSPORTATION SAFETY :
BOARD,                       :
                             :
     Defendant.             :


**M E M O R A N D U M**


EDUARDO C. ROBRENO, J.                    APRIL 9, 2019


I.    **INTRODUCTION**

          Plaintiffs are a law firm retained to represent

aircraft accident victims and their families, and the parents of

Mark Goldstein, an aircraft accident victim.  ECF No. 16 ¶¶ 1,

3.  The Amended Complaint only identifies the Goldstein family

as clients of the law firm.  Id. ¶ 4.

          Plaintiffs filed this suit against the National

Transportation Safety Board (NTSB) because the NTSB has denied

Plaintiffs' Freedom of Information Act (FOIA) requests[1] for documents related to seven aircraft accident investigations.[2] See id. ¶¶ 10-14. Plaintiffs requested the NTSB to produce various types of materials, including "investigation materials," "missing pieces of the [Goldstein] accident aircraft wreckage," "logbooks and video footage of the accident," and "data download from equipment onboard the accident aircraft." See id. ¶ 13.

Earlier in the litigation, the Court granted the NTSB's motion to dismiss Count I -- "Obstruction of Justice and Violation of Due Process". See ECF No. 15. Only Count II remains in this case -- "Violation of the Freedom of Information Act".

---

[1]     Plaintiffs filed their FOIA requests because they have a particular interest in the information sought. However, the FOIA does not require a requestor to have peculiar interests, rather "the identity of the requesting party has no bearing on the merits of his or her FOIA request." U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 771 (1989). Indeed, Congress "clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest in a particular document." Id. (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)) (quotation marks and alterations omitted). Put another way, neither a noble nor a nefarious purpose will alter the scope of materials available under the FOIA.

[2]     According to the NTSB, the investigations have been completed.

        During this case, Plaintiffs informed the Court that they were involved in litigation over these aircraft accidents. According to Plaintiffs, the aircraft accident litigation is still active.

The NTSB filed a motion for summary judgment. ECF No. 51. The NTSB's briefing includes a "Vaughn" index, ECF No. 51-1, that describes the nature of the materials it continues to withhold from Plaintiffs and the reason why those materials are being withheld. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The NTSB also submitted copies of documents and videos to the Court for in camera review.

Upon consideration of the parties' arguments, and following an in camera review, the Court finds that the NTSB properly denied Plaintiffs' FOIA requests for the documents and videos. However, the Court finds that in this case, information concerning the wreckage and the wreckage itself has not been argued to be exempt under the FOIA, and so must be produced.

## II. LAW

The "FOIA creates a presumption favoring disclosure" of Government documents. Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1163 (3d Cir. 1995). However, certain categories of documents are exempt from the FOIA's production requirements, i.e., an agency may withhold materials that fall within one or more of the nine enumerated exemptions. See 5 U.S.C. § 552(b). As relevant to this case, by statutory exemption number, the FOIA does not apply to matters and materials that are:

(2) related solely to the internal personnel
rules and practices of an agency;

(3) specifically exempted from disclosure by
statute if that statute requires that the matters
be withheld from the public in such a manner as
to leave no discretion on the issue or
establishes particular criteria for withholding
or refers to particular types of matters to be
withheld;

(4) trade secrets and commercial or financial
information obtained from a person and privileged
or confidential;

(5) inter-agency or intra-agency memorandums or
letters that would not be available by law to a
party other than an agency in litigation with the
agency, provided that the deliberative process
privilege shall not apply to records created 25
years or more before the date on which the
records were requested; and

(6) personnel and medical files and similar files
the disclosure of which would constitute a
clearly unwarranted invasion of personal privacy.

Id.

A district court reviews an agency's use of a FOIA

exemption to withhold documents de novo.  Id. § 552(a)(4)(B).

The agency has the burden of showing that a statutory

exemption applies.  Id.; see also Manna, 51 F.3d at 1163 (citing

McDonnell v. United States, 4 F.3d 1227, 1241 (3d Cir. 1993)).

The agency can sustain its burden under the FOIA by

submitting a detailed explanation, that can take many different

forms and combinations, that "describe[s] the material withheld

and detail[s] why it fits within the claimed exemption."

McDonnell, 4 F.3d at 1241; Lame v. U.S. Dep't of Justice, 654

F.2d 917, 922 (3d Cir. 1981) ("[T]the district court must have furnished to it, in whatever form, public or private, all of the detailed justifications advanced by the government for non-disclosure.").  The court may order the agency to submit copies of the withheld materials for in camera review.  5 U.S.C. § 552(a)(4)(B); see also Ferri v. Bell, 645 F.2d 1213, 1225-26 (3d Cir. 1981), modified, 671 F.2d 769 (3d Cir. 1982).

The agency is entitled to summary judgment in a FOIA case if the agency "describe[s] the withheld information and the justification for withholding [it] with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption" and the agency's submissions in support of withholding "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Manna, 51 F.3d at 1163-64 (quoting Am. Friends Serv. Comm. v. Dep't of Def., 83l F.2d 441, 444 (3d Cir. 1987)).  The court may also grant summary judgment after in camera review.  See Lame v. U.S. Dep't of Justice, 767 F.2d 66, 71-72 (3d Cir. 1985); Cuccaro v. Sec'y of Labor, 770 F.2d 355, 356-57, 361 (3d Cir. 1985).

## III. DISCUSSION

Plaintiffs seek the production of documents and other materials in connection with seven NTSB aircraft accident investigations.  See ECF No. 51 at 4-7; ECF No. 52-1 at 2.  In

support of its motion for summary judgment, the NTSB identified

and argued the applicability of at least one of Exemptions 2, 3,

4, 5, or 6 as the basis for withholding each of the materials

listed in the Vaughn index.  See ECF No. 51-1.  The majority of

the materials were withheld pursuant to Exemption 5.  See id.

In some instances, Exemptions 5 and 6 are asserted.  The NTSB

made no arguments concerning the Goldstein aircraft accident

wreckage or information about the wreckage.

Below, the Court addresses by exemption category

whether the asserted exemptions properly apply to the withheld

materials.

**A.    Exemption 2**

Under Exemption 2, an agency may withhold materials

that are:

> **related solely to the internal personnel rules
> and practices of an agency.**

5 U.S.C. § 552(b)(2).

Plaintiffs did not argue in their opposition briefing

that the NTSB had improperly withheld materials under Exemption

2.  See ECF No. 52-1.

The Court agrees with the NTSB that Exemption 2

applies to the withheld communications that concern requests for

"compensatory and overtime pay for work during the

investigation." ECF No. 51 at 11; see Milner v. Dep't of Navy, 562 U.S. 562, 570 & n.4, 581 (2011).

**B.  Exemption 3**

Under Exemption 3, an agency may withhold materials that are:

> **specifically exempted from disclosure by statute if that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or establishes particular criteria for withholding or refers to particular types of matters to be withheld.**

5 U.S.C. § 552(b)(3).

The NTSB argues that a video taken by a passenger on the aircraft using a cell phone is exempted from disclosure by statute. ECF No. 51 at 12. The statute, 49 U.S.C. § 1114(c), prohibits the NTSB from disclosing a recording made by cockpit video recorder (CVR):

> [The NTSB] may not disclose publicly any part of a cockpit voice or video recorder recording or transcript of oral communications by and between flight crew members and ground stations related to an accident or incident investigated by the [NTSB].

49 U.S.C. § 1114(c)(1) (emphasis added).

The NTSB further argues that the CVR statute falls within the ambit of Exemption 3 because, by the terms of the statute, the NTSB has no discretion on the issue of disclosure. ECF No. 51 at 12-13.

As to whether the cell phone video at issue qualifies as a CVR recording, the NTSB argues that it interprets the statute to include "videos of the interior of the cockpit taken with a cell phone." Id. The NTSB further argues that it is entitled to deference on this interpretation. Id.

In response, Plaintiffs do not rebut any of the NTSB's arguments that the CVR statute is an Exemption 3 statute, the NTSB correctly interpreted the CVR statute, or that the cell phone video is CVR statute material. Instead, Plaintiffs respond that Congress "has explicitly authorized courts to order production of onboard video under 49 U.S.C. § 1154." ECF No. 52-1 at 5. Plaintiffs argue that "under 49 U.S.C. § 1154, the video recording may be produced in discovery," provided certain conditions are met.[3] Id. at 14-15. Plaintiffs further argue

_____

[3] Of relevance to Plaintiffs' argument, 49 U.S.C. § 1154(a) provides:

> (1)(C) Except as provided by this subsection, a party in a judicial proceeding may not use discovery to obtain a cockpit or surface vehicle recorder recording.

> (3) Except as provided in paragraph (4)(A) of this subsection, a court may allow discovery by a party of a cockpit or surface vehicle recorder recording, including with regard to a video recording any still image that the National Transportation Safety Board has not made available to the public under section 1114(c) or 1114(d) of this title, if, after an in camera review of the recording, the court decides that—

that "virtually every court that has addressed the issue has

held the CVR recording discoverable, since it is likely to lead

to the discovery of evidence that is relevant to the allegations

---

> (A) the parts of the transcript made
> available to the public under section
> 1114(c) or 1114(d) of this title and to the
> party through discovery under paragraph (2)
> of this subsection do not provide the party
> with sufficient information for the party to
> receive a fair trial; and
>
> (B) discovery of the cockpit or surface
> vehicle recorder recording, including with
> regard to a video recording any still image
> that the National Transportation Safety
> Board has not made available to the public
> under section 1114(c) or 1114(d) of this
> title, is necessary to provide the party
> with sufficient information for the party to
> receive a fair trial.
>
> (4)(A) When a court allows discovery in a
> judicial proceeding of a still image or a part of
> a cockpit or surface vehicle recorder transcript
> not made available to the public under section
> 1114(c) or 1114(d) of this title or a cockpit or
> surface vehicle recorder recording, the court
> shall issue a protective order—
>
> (i) to limit the use of the still image, the part
> of the transcript, or the recording to the
> judicial proceeding; and
>
> (ii) to prohibit dissemination of the still
> image, the part of the transcript, or the
> recording to any person that does not need access
> to the still image, the part of the transcript,
> or the recording for the proceeding.

of the parties involved." Id. at 16 (citing eight pan-United

States federal and state court decisions[4]).

To evaluate whether an agency has properly invoked

Exemption 3, the Court must first determine whether the claimed

statute is a statute of FOIA exemption, and second whether the

withheld material satisfies the criteria of that exemption

statute. See C.I.A. v. Sims, 471 U.S. 159, 167 (1985).

The first part of the test is straightforward in this

case, and the Court finds that the CVR statute is one that is

covered by Exemption 3. By its plain terms, § 1114(c)(1)

prohibits the NTSB from disclosing the video, and leaves the

NTSB with no discretion on the issue. Therefore, this statute

is an Exemption 3 statute.

The second part of the test is less straightforward in

this case. The plain text of the Exemption 3 statute does not

state that it covers video recordings made by a cell phone

camera. Thus, the inquiry turns on whether the Court agrees

---

[4]      Those decisions are:  McCoy v. Southwest Airlines Co.,
208 F.R.D. 617 (C.D. Cal. 2002); Buschmann v. Little Rock
National. Airport, 222 F.R.D. 114 (N.D. Tex. 2004); In re Air
Crash at Lexington, Kentucky, August 27, 2006, No. CIV.A. 5:06-
CV316-KSF, 2007 WL 4321865 (E.D. Ky. Dec. 6, 2007); In re
September 11 Litigation, No. 02 CIV. 7912 (AKH), 2007 WL 2668608
(S.D.N.Y. Sept. 12, 2007); Wandel v. American Airlines, Inc.,
No. 052-00275, slip op. (Mo. St. Louis Cir. Ct. Apr. 18, 2007);
In Re Aircrash Near Roselawn, Indiana, MDL-1070, No. 95 C 4593,
slip op. (N.D. Ill. Dec. 4, 1996); McCoy v. USAir, Inc., No.
94L11726, slip op. (Ill. Cook Cnty. Dec. 23, 1997); and In Re
Air Crash Disaster at John F. Kennedy International Airport, 687
F.2d 626 (2d Cir. 1982).

with the NTSB's interpretation that "the term 'cockpit voice or video recorder recording' in § 1114(c)(1) . . . include[s] videos of the interior of the cockpit taken with a cell phone." ECF No. 51 at 12-13.  The NTSB argues that its interpretation "is reasonable and entitled to deference."  Id. (citing e.g., C.I.A. v. Sims, 471 U.S. at 173-74, and Aronson v. I.R.S., 973 F.2d 962, 965 (1st Cir. 1992)).

But should the Court defer to the NTSB's interpretation?  The cases cited by the NTSB do not appear to sweep as broadly as the NTSB argues, and the answer is not so clear.

The Court is not persuaded that Sims fully supports the NTSB's position.  Sims concerned an Exemption 3 statute that necessarily required deference to the agency because the statute itself indicated that the agency had broad authority on the matter to define what were covered materials in matters of national intelligence and secrecy, and the legislative history confirmed this result.  See Sims, 471 U.S. at 168-73.

The NTSB also cites the First Circuit's decision in Aronson, a thorough and well-reasoned opinion concerning whether the FOIA statute was trumped by the confidentiality provisions of a tax statute asserted as an Exemption 3 statute.  See Aronson, 973 F.2d at 965-67.  The court juxtaposed the purposes of the statutes:  "sunlight" is brought by the FOIA, while

"clouds" of confidentiality are brought by the Exemption 3 tax statute at issue.  See id.  The court acknowledged that other courts facing the exact same issue had decided the matter "without giving the agency leeway," but the court reasoned that Congress's intent was for the confidentiality statute to control.  Id.  The court's conclusion indicated that some deference was required:  "once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA de novo review normally ends."  Id. at 967 (emphasis added).

But other Circuits have rejected the First Circuit's approach in Aronson, and have ruled that there is no deference to an agency's interpretation when considering Exemption 3 statutes.  See, e.g., Carlson v. U.S. Postal Serv., 504 F.3d 1123, 1126-27 (9th Cir. 2007).  In Carlson, the Ninth Circuit explained that its own precedent, which predated the Aronson opinion, required no deference because it was "the court's responsibility to ensure that agencies do not interpret exemptions too broadly, [therefore] deference appears inappropriate in the FOIA context."  Id. at 1127 (quoting Lessner v. U.S. Dep't of Commerce, 827 F.2d 1333, 1335 (9th Cir. 1987).

The parties did not cite, and the Court is not aware of, Third Circuit precedent that directly answers whether the NTSB should be afforded deference in its interpretation of an Exemption 3 statute. Those cases that consider FOIA do not definitively decide the deference issues raised by the NTSB's argument. See, e.g., Houghton v. Nat'l Sec. Agency, 378 F. App'x 235, 238 (3d Cir. 2010) ("To evaluate an Agency's Exemption Three claim, a court must determine whether the claimed statute is a statute of exemption under FOIA, and whether the withheld material satisfies the criteria of the exemption statute." (citing Sims, 471 U.S. at 167)); McDonnell, 4 F.3d at 1249 ("[T]he Government bears the burden of establishing that the withheld material falls within the scope of the federal statute upon which it relies."); Grasso v. I.R.S., 785 F.2d 70, 72-75 (3d Cir. 1986) (ruling that a request for disclosure was governed by the FOIA and not the tax statute, but remaining silent on whether there is some deference); Ferri, 645 F.2d at 1221 ("In light of [the de novo determination] mandate, courts generally should not pay special deference to the agency's findings.").

Absent clear direction from controlling case law, the Court returns to the text of the FOIA statute, which requires a court to "determine the matter de novo."  5 U.S.C. § 552(a)(4)(B).  The "matter" necessarily includes all of the

factual and legal decisions made by an agency, but the NTSB's deference argument requires the Court to parse the command of conducting de novo review to mean only part of the agency's decision is reviewed rather than the matter as a whole.  Without more guidance from the FOIA statute itself or an asserted Exemption 3 statute (as was the case in Sims), the Court is not confident that such parsing is the appropriate default mode of analysis.

While the issue of deference remains unclear, even if the Court does not give deference to the agency's interpretation, the Court finds that cell phone video falls within the material covered by the asserted Exemption 3 statute, 49 U.S.C. § 1114(c)(1).  Whether a video is recorded by a device that is attached to the aircraft or is handheld, to the extent video footage of the cockpit is recorded, any differences between the devices are irrelevant.  What is important is the prohibition on disclosure of recordings made of the cockpit: the manner of recording is immaterial.  This view is further supported by Plaintiffs' explanation that the cell phone video would generally show exactly the types of information captured by a fixed or built-in cockpit video recorder.  See ECF No. 52-1 at 6.

All that is left to discuss is Plaintiffs' "exemption-to-the-exemption" argument.  Given that the Court has found that

there is an absolute prohibition imposed by § 1114(c)(1), access

to the materials under the FOIA is foreclosed, and so the Court

need not address this argument.[5]

_____

[5]      In any case, Plaintiffs misapprehend the scope and
purpose of the statute they cite, 49 U.S.C. § 1154(a), as
authorizing disclosure of the video.

      As the NTSB correctly states, § 1154(a) applies to
litigation over aircraft crashes, not litigation over FOIA
access.  Indeed, the text of § 1154(a) restricts its
applicability by stating that "[e]xcept as provided by this
subsection, a party in a judicial proceeding may not use
discovery . . . ."  49 U.S.C. § 1154(a)(1).  And before a court
presiding over the case in which discovery is requested can
order the NTSB to produce a CVR recording, the court must
determine whether "discovery . . . is necessary to provide the
party with sufficient information for the party to receive a
fair trial."  Id. § 1154(a)(3)(B).  A court that is not
presiding over the aircraft litigation cannot be expected to
determine what information the requesting party needs.

      At least one district court has found that the
forerunner to § 1154(a) did not require disclosure of the CVR
recordings.  In McGilvra v. National Transportation Safety
Board, 840 F. Supp. 100 (D. Colo. 1993), cited by the NTSB, the
court faced a FOIA request for the CVR tape from an aircraft
crash.  At the time the FOIA request was made, litigation over
the aircraft crash was pending in an Illinois state court.
McGilvra, 840 F. Supp. at 101.  The federal court ruled that
"[t]he determination whether the [video] is discoverable by a
party to plane crash litigation is a question that must be
addressed to the court where that litigation is pending.  . . .
The FOIA does not grant this court authority to order discovery
in a case that is not pending before it."  Id. at 103 (emphasis
added).

      Although Plaintiffs were able to cite a litany of
cases in which production was ordered, see supra n.2, those
cases all concerned aircraft crash litigation and not FOIA
litigation, rendering those decisions inapposite.

**C.    Exemption 4**

Under Exemption 4, an agency may withhold materials
that are:

> **trade secrets and commercial or financial
> information obtained from a person and privileged
> or confidential.**

5 U.S.C. § 552(b)(4).

Plaintiffs did not argue in their opposition briefing
that the NTSB had improperly withheld materials under Exemption
4.  See ECF No. 52-1.

The Court agrees with the NTSB that Exemption 4
applies to the withheld record that contains "commercial
information about an aircraft component."  ECF No. 51 at 16;
Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312,
319 (D.C. Cir. 2006).

**D.    Exemption 5**

Under Exemption 5, an agency may withhold materials
that are:

> **inter-agency or intra-agency memorandums or
> letters that would not be available by law to a
> party other than an agency in litigation with the
> agency, provided that the deliberative process
> privilege shall not apply to records created 25
> years or more before the date on which the
> records were requested.**

5 U.S.C. § 552(b)(5).

The NTSB argues that these materials are exempted as
being privileged documents that reflect the NTSB's deliberative

process in determining the circumstances of the accidents and in developing safety recommendations. ECF No. 51 at 18-23. Further, the NTSB argues that the deliberative process privilege is not limited to documents related to a policy decision, and that factual information is also protected. Id. at 24-27.

Plaintiffs argue that Exemption 5 does not apply because the documents are unrelated to a policy decision. ECF No. 52-1 at 10-11. Plaintiffs also argue that factual materials are not protected. Id. at 12.

Exemption 5 "encompasses the traditional discovery privileges, including the deliberative process privilege, which 'protects agency documents that are both predecisional and deliberative.'" Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 183 (3d Cir. 2007) (quoting Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006); citing Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).

To decide whether the predecisional privilege applies, a court must determine whether the document "was generated before the adoption of an agency policy," or other decision, and whether the document "reflects the give-and-take of the consultative process." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege covers "recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." <u>Id.</u> Such documents "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." <u>Id.</u>

An agency does not have to identify a specific decision in order to invoke Exemption 5. <u>N.L.R.B. v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 151 n.18 (1975). However, the agency must identify "what deliberative process is involved, and the role played by the documents." <u>Coastal States Gas Corp.</u>, 617 F.2d at 868.

Exemption 5 still applies to predecisional materials even after a decision has been made:

> The purpose of the privilege for predecisional deliberations is to insure that a decisionmaker will receive the unimpeded advice of his associates. The theory is that if advice is revealed, associates may be reluctant to be candid and frank. It follows that documents shielded by executive privilege remain privileged even after the decision to which they pertain may have been effected, since disclosure at any time could inhibit the free flow of advice, including analysis, reports, and expression of opinion within the agency.

<u>Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill</u>, 443 U.S. 340, 359-60 (1979).

The privilege also protects the work done by consultants on behalf of the agency.  See, e.g., McKinley v. Bd. of Governors of Fed. Reserve Sys., 647 F.3d 331, 336-39 (D.C. Cir. 2011).

"Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an 'exercise of discretion and judgment calls.'"  Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting Mapother v. Dep't of Justice, 3 F.3d 1533, 1539 (D.C. Cir. 1993)).  "[T]he selection or organization of facts" may be "part of an agency's deliberative process," and thus exempt under Exemption 5.  Id. (citing Montrose Chem. Corp. of Cal. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974)).  Thus, the D.C. Circuit has held that non-disclosure was proper where a report's factual material had been "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action."  Mapother, 3 F.3d at 1539.

The privilege applies to agency decisions that are not a policy decision.  Klamath, 532 U.S. at 8 ("[D]eliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." (emphasis added)(internal quotation marks omitted)).

Several circuit decisions confirm not only that the privilege applies to decisions that are not formally policy, but in particular to investigations of aircraft accidents by various agencies.  The D.C. Circuit affirmed a ruling that "predecisional material from aircraft accident investigations" was properly withheld "under the deliberative process privilege incorporated into Exemption 5."  Badhwar v. U.S. Dep't of Air Force, 829 F.2d 182, 183, 184-85 (D.C. Cir. 1987).

The Ninth Circuit has also considered whether Exemption 5 had been properly invoked in a case involving an aircraft accident.  Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964 (9th Cir. 2009).  The court ruled that certain documents were part of the predecisional process where those documents had been prepared "for the specific purpose of aiding the agency in its determination of the likely flight path of the aircraft following the explosion, a determination central to the [agency's] task of explaining what [happened]," and that discussed "estimates of the aircraft's flight path, [and] reviews those estimates and makes recommendations."  Id. at 982-83.  Because those documents exposed the thought processes of the agency, including evaluations of data and calculations, the privilege applied.  Id. at 982-84.

The Court finds that the materials at issue are protected by the predecisional privilege.  First, the NTSB is

investigating various accidents, and has not yet issued a finding or recommendation as a result of the investigation. It is of no moment that the process may not result in an adjudication or the adoption of a policy; rather, the deliberative process is at work, has yet to be completed, and will likely result in the issuance of a report with recommendations.

Second, the materials reflect the give-and-take of the consultative process, including draft documents and correspondence containing questions and answers. To the extent the materials have factual information, they are still protected because they represent agency workers' discretion and judgment calls, for example through the selection, interpretation, or manipulation to generate other factual bases for further use. See Ancient Coin Collectors Guild, 641 F.3d at 513; Lahr, 569 F.3d at 982-83.

The Court finds that the NTSB properly withheld the materials identified under Exemption 5.

**E.    Exemption 6**

Under Exemption 6, an agency may withhold materials that are:

> **personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.**

5 U.S.C. § 552(b)(6).

Exemption 6 protects privacy interests of individuals, whether the individuals are alive or dead.  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 167 (2004).

The NTSB argues that the materials at issue here include photographs "depicting mutilated human remains, autopsy reports, and medical case reviews," and are thus "personnel, medical and similar files" covered by Exemption 6.  ECF No. 51 at 29.

Plaintiffs make a one-paragraph argument calling for the Court to apply relevant case law and to balance the public interest in disclosure against privacy interests.  ECF No. 52-1 at 13.  Plaintiffs do not claim to have a direct and personal interest in the Exemption 6 materials.  See id.

In the Third Circuit, to determine whether disclosure under the FOIA is required, a court must "determine whether the information sought is subject to privacy protection and, if so, whether the invasion of privacy is 'clearly unwarranted.'  This inquiry involves a balancing of the public interest served by disclosure against the harm resulting from the invasion of privacy."  Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. & Urban Dev., 852 F.2d 87, 89 (3d Cir. 1988), holding modified by Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891 (3d Cir. 1998).

"[T]he reason for which [a plaintiff] seeks disclosure of the medical records [and similar files] at issue . . . is irrelevant to whether disclosure is proper." McDonnell, 4 F.3d at 1253. "Instead, whether disclosure of a private document is warranted under Exemption 6 must turn . . . on the nature of the requested document and its relationship to the basic purpose of the [FOIA] to open agency action to the light of public scrutiny." Id. (internal quotation marks omitted) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976)). Indeed, "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." Reporters Comm., 489 U.S. at 774.

The Court finds that the strong privacy interests of the deceased and the relatives of the deceased are not outweighed by any public interest factors which are, at most, minimal. The documents reveal little-to-nothing at all about the agency's activities and conduct, rather the documents concern medical issues and medical opinions. Accordingly, the death scene photographs, autopsy reports, and medical case reviews were properly withheld under Exemption 6.

**F.    Aircraft wreckage**

The NTSB did not move for summary judgment on Plaintiffs' request for pieces of the aircraft wreckage.  See ECF No. 16 ¶ 13, Prayer for Relief to Count II.

Plaintiffs argue that in light of the NTSB's silence on this issue, the Court should order "such components [to] be produced, or information as to their chain of custody [to] be presented to the Plaintiffs."  ECF No. 52-1 at 17.[6]

In the Amended Complaint, Plaintiffs included copies of the correspondence concerning their request for the wreckage.

---

[6]        "FOIA cases typically and appropriately are decided on motions for summary judgment."  Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); see also, Rimmer v. Holder, 700 F.3d 246, 255 (6th Cir. 2012); Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety & Health Admin., 280 F.3d 539, 543 (5th Cir. 2002); Samahon v. F.B.I., 40 F. Supp. 3d 498, 502 (E.D. Pa. 2014).  This case is no different.  On September 12, 2017, the Court held a status and scheduling conference during which the Court explained that the merits of Plaintiffs' FOIA requests would be resolved through summary judgment.  See ECF No. 37 at 19.  The NTSB stated that it had "completed its production" in this case, and that it had asserted exemptions as it believed were appropriate.  Id.  Accordingly, the NTSB indicated that all issues in this case could be resolved following briefing.  The NTSB filed a "Motion for Summary Judgment," rather than a motion for partial summary judgment; moreover, the NTSB's proposed order stated that the case would be closed, should the Court find in favor of the NTSB.  See ECF No. 51, Proposed Order.  Furthermore, despite receiving clear notice from Plaintiffs that it had not briefed the Court about the wreckage, the NTSB failed to seek leave to file a reply brief addressing Plaintiffs' arguments concerning the wreckage.  In light of the foregoing, the Court finds that the merits of all of the issues raised by Plaintiffs are squarely before the Court and can be ruled on.

ECF No. 16 Exs. 8, 9, 11.  On July 12, 2016, Plaintiffs requested "all wreckage components" from the Goldstein accident "be immediately released for inspection."  Id. Ex. 8. Plaintiffs specifically called out "rudder boost components" and related pieces.  Id.  The NTSB responded on July 25, 2016, by explaining that the requested pieces of wreckage had been either "released to Air Salvage of Dallas" or "consumed by the post-crash fire."  Id. Ex. 11.

Access to and the release of wreckage is governed by 49 C.F.R. § 831.12.  Under that regulation, only authorized persons are permitted access to wreckage until the NTSB has determined it has no further need for the wreckage.  49 C.F.R. § 831.12.

One cannot produce that which one does not have.  The NTSB has stated that the requested wreckage was never or is no longer in the NTSB's possession or control.  The NTSB stated that its investigation was complete, that it no longer had custody or control over any of the wreckage, and that wreckage has been returned to the owner or Air Salvage of Dallas. Therefore, the NTSB cannot now release the wreckage for inspection.  However, to the extent the NTSB at some time did have the wreckage pieces, the NTSB must have prepared chain of custody records, and such records could be produced.

The NTSB has not challenged Plaintiffs' request for chain of custody information.  Accordingly, the NTSB shall provide all documents accounting for the custody of the wreckage pieces.  Furthermore, although the NTSB did not challenge Plaintiffs' request to inspect the Goldstein accident wreckage, statements by the NTSB indicate that the agency has completed its investigation, has no further need for the wreckage, and has shipped the wreckage to the owner or Air Salvage of Dallas.  To the extent the NTSB does have any pieces of wreckage still in its possession, the NTSB must make the same available for inspection.  But assuming the NTSB is correct, if Plaintiffs need to inspect the wreckage, their remedy lies with seeking access from the person or entity currently in possession of the wreckage, whether that is Air Salvage of Dallas or another third party.

## IV.  CONCLUSION

The Court has reviewed the NTSB's <u>Vaughn</u> index and the withheld materials and finds that stated FOIA exemptions apply. The Court further finds that the NTSB has provided no justification to withhold information regarding the Goldstein aircraft wreckage, or the wreckage itself if the NTSB still has it.  Accordingly, the Court will grant the NTSB's motion for summary judgment as to the documents and videos identified in

the Vaughn index, but will also order the NTSB to produce chain-of-custody information about the wreckage or make the wreckage available for inspection.