IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THE WOLK LAW FIRM,            : CIVIL ACTION
DON GOLDSTEIN, and            : NO. 16-05632
INGRID GOLDSTEIN,             :
                              :
     Plaintiffs,              :
                              :
v.                            :
                              :
UNITED STATES OF AMERICA      :
NATIONAL TRANSPORTATION SAFETY :
BOARD,                        :
                              :
     Defendant.               :


**A M E N D E D     M E M O R A N D U M**[1]


EDUARDO C. ROBRENO, J.                    JUNE 18, 2019


I.   **INTRODUCTION**

        Plaintiffs are a law firm retained to represent

aircraft accident victims and their families, and the parents of

Mark Goldstein, an aircraft accident victim.  ECF No. 16 ¶¶ 1,

3.  The Amended Complaint only identifies the Goldstein family

as clients of the law firm.  Id. ¶ 4.

---

[1]        Exhibit A to this Amended Memorandum is a blackline
version showing the additions and deletions to the text of the
original Memorandum to conform the Amended Memorandum to the
Order of June 18, 2019 granting Defendant's Motion for
Reconsideration.

Plaintiffs filed this suit against the National Transportation Safety Board (NTSB) because the NTSB has denied Plaintiffs' Freedom of Information Act (FOIA) requests[2] for documents related to seven aircraft accident investigations.[3] See id. ¶¶ 10-14. Plaintiffs requested the NTSB to produce various types of materials, including "investigation materials," "missing pieces of the [Goldstein] accident aircraft wreckage," "logbooks and video footage of the accident," and "data download from equipment onboard the accident aircraft." See id. ¶ 13.

Earlier in the litigation, the Court granted the NTSB's motion to dismiss Count I -- "Obstruction of Justice and Violation of Due Process". See ECF No. 15. Only Count II

---

[2]     Plaintiffs filed their FOIA requests because they have a particular interest in the information sought. However, the FOIA does not require a requestor to have peculiar interests, rather "the identity of the requesting party has no bearing on the merits of his or her FOIA request." U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 771 (1989). Indeed, Congress "clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest in a particular document." Id. (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)) (quotation marks and alterations omitted). Put another way, neither a noble nor a nefarious purpose will alter the scope of materials available under the FOIA.

[3]     According to the NTSB, the investigations have been completed.

        During this case, Plaintiffs informed the Court that they were involved in litigation over these aircraft accidents. According to Plaintiffs, the aircraft accident litigation is still active.

remains in this case -- "Violation of the Freedom of Information Act".

The NTSB filed a motion for summary judgment. ECF No. 51. The NTSB's briefing includes a "Vaughn" index, ECF No. 51-1, that describes the nature of the materials it continues to withhold from Plaintiffs and the reason why those materials are being withheld. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The NTSB also submitted copies of documents and videos to the Court for in camera review.

Upon consideration of the parties' arguments, and following an in camera review, the Court finds that the NTSB properly denied Plaintiffs' FOIA requests for the documents and videos.

Furthermore, the Court is not authorized under the FOIA to order the production of the aircraft wreckage because it is not an agency record, and the NTSB has not withheld chain of custody documents concerning the wreckage.

## II. LAW

The FOIA confers federal jurisdiction to enjoin a federal agency from withholding agency records that are improperly being withheld. 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (explaining that federal jurisdiction exists to determine whether there are improperly withheld agency records). "For purposes of the FOIA,

the term 'records' does not include tangible objects." <u>Friedman</u>
<u>v. U.S. Secret Serv.</u>, 923 F. Supp. 2d 262, 275 (D.D.C. 2013).

The "FOIA creates a presumption favoring disclosure"
of Government documents. <u>Manna v. U.S. Dep't of Justice</u>, 51
F.3d 1158, 1163 (3d Cir. 1995). Furthermore, as a predicate to
granting FOIA relief, the agency records must have been
withheld. <u>See</u> 5 U.S.C. § 552(a)(4)(B); <u>Tax Analysts</u>, 492 U.S.
at 142. However, certain categories of documents are exempt
from the FOIA's production requirements, <u>i.e.</u>, an agency may
withhold materials that fall within one or more of the nine
enumerated exemptions. <u>See</u> 5 U.S.C. § 552(b). As relevant to
this case, by statutory exemption number, the FOIA does not
apply to matters and materials that are:

> (2) related solely to the internal personnel
> rules and practices of an agency;
>
> (3) specifically exempted from disclosure by
> statute if that statute requires that the matters
> be withheld from the public in such a manner as
> to leave no discretion on the issue or
> establishes particular criteria for withholding
> or refers to particular types of matters to be
> withheld;
>
> (4) trade secrets and commercial or financial
> information obtained from a person and privileged
> or confidential;
>
> (5) inter-agency or intra-agency memorandums or
> letters that would not be available by law to a
> party other than an agency in litigation with the
> agency, provided that the deliberative process
> privilege shall not apply to records created 25
> years or more before the date on which the
> records were requested; and

> (6) personnel and medical files and similar files
> the disclosure of which would constitute a
> clearly unwarranted invasion of personal privacy.

Id.

A district court reviews an agency's use of a FOIA exemption to withhold documents de novo. Id. § 552(a)(4)(B).

The agency has the burden of showing that a statutory exemption applies. Id.; see also Manna, 51 F.3d at 1163 (citing McDonnell v. United States, 4 F.3d 1227, 1241 (3d Cir. 1993)).

The agency can sustain its burden under the FOIA by submitting a detailed explanation, that can take many different forms and combinations, that "describe[s] the material withheld and detail[s] why it fits within the claimed exemption." McDonnell, 4 F.3d at 1241; Lame v. U.S. Dep't of Justice, 654 F.2d 917, 922 (3d Cir. 1981) ("[T]the district court must have furnished to it, in whatever form, public or private, all of the detailed justifications advanced by the government for non-disclosure."). The court may order the agency to submit copies of the withheld materials for in camera review. 5 U.S.C. § 552(a)(4)(B); see also Ferri v. Bell, 645 F.2d 1213, 1225–26 (3d Cir. 1981), modified, 671 F.2d 769 (3d Cir. 1982).

The agency is entitled to summary judgment in a FOIA case if the agency "describe[s] the withheld information and the justification for withholding [it] with reasonable specificity, demonstrating a logical connection between the information and

the claimed exemption" and the agency's submissions in support of withholding "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Manna</u>, 51 F.3d at 1163-64 (quoting <u>Am. Friends Serv. Comm. v. Dep't of Def.</u>, 831 F.2d 441, 444 (3d Cir. 1987)). The court may also grant summary judgment after <u>in camera</u> review. <u>See</u> <u>Lame v. U.S. Dep't of Justice</u>, 767 F.2d 66, 71-72 (3d Cir. 1985); <u>Cuccaro v. Sec'y of Labor</u>, 770 F.2d 355, 356-57, 361 (3d Cir. 1985).

## III. DISCUSSION

Plaintiffs seek the production of documents and other materials in connection with seven NTSB aircraft accident investigations. <u>See</u> ECF No. 51 at 4-7; ECF No. 52-1 at 2. In support of its motion for summary judgment, the NTSB identified and argued the applicability of at least one of Exemptions 2, 3, 4, 5, or 6 as the basis for withholding each of the materials listed in the <u>Vaughn</u> index. <u>See</u> ECF No. 51-1. The majority of the materials were withheld pursuant to Exemption 5. <u>See</u> <u>id.</u> In some instances, Exemptions 5 and 6 are asserted.

Below, the Court addresses by exemption category whether the asserted exemptions properly apply to the withheld materials. The Court also addresses Plaintiffs' request for aircraft accident wreckage and related documents.

**A. Exemption 2**

Under Exemption 2, an agency may withhold materials that are:

> **related solely to the internal personnel rules and practices of an agency.**

5 U.S.C. § 552(b)(2).

Plaintiffs did not argue in their opposition briefing that the NTSB had improperly withheld materials under Exemption 2. <u>See</u> ECF No. 52-1.

The Court agrees with the NTSB that Exemption 2 applies to the withheld communications that concern requests for "compensatory and overtime pay for work during the investigation." ECF No. 51 at 11; <u>see</u> <u>Milner v. Dep't of Navy</u>, 562 U.S. 562, 570 & n.4, 581 (2011).

**B. Exemption 3**

Under Exemption 3, an agency may withhold materials that are:

> **specifically exempted from disclosure by statute if that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or establishes particular criteria for withholding or refers to particular types of matters to be withheld.**

5 U.S.C. § 552(b)(3).

The NTSB argues that a video taken by a passenger on the aircraft using a cell phone is exempted from disclosure by statute. ECF No. 51 at 12. The statute, 49 U.S.C. § 1114(c),

prohibits the NTSB from disclosing a recording made by cockpit video recorder (CVR):

> [The NTSB] may not disclose publicly any part of a <u>cockpit</u> voice or <u>video recorder recording</u> or transcript of oral communications by and between flight crew members and ground stations related to an accident or incident investigated by the [NTSB].

49 U.S.C. § 1114(c)(1) (emphasis added).

The NTSB further argues that the CVR statute falls within the ambit of Exemption 3 because, by the terms of the statute, the NTSB has no discretion on the issue of disclosure. ECF No. 51 at 12-13.

As to whether the cell phone video at issue qualifies as a CVR recording, the NTSB argues that it interprets the statute to include "videos of the interior of the cockpit taken with a cell phone." <u>Id.</u> The NTSB further argues that it is entitled to deference on this interpretation. <u>Id.</u>

In response, Plaintiffs do not rebut any of the NTSB's arguments that the CVR statute is an Exemption 3 statute, the NTSB correctly interpreted the CVR statute, or that the cell phone video is CVR statute material. Instead, Plaintiffs respond that Congress "has explicitly authorized courts to order production of onboard video under 49 U.S.C. § 1154." ECF No. 52-1 at 5. Plaintiffs argue that "under 49 U.S.C. § 1154, the video recording may be produced in discovery," provided certain

conditions are met.[4]  Id. at 14-15.  Plaintiffs further argue

that "virtually every court that has addressed the issue has

---

[4]        Of relevance to Plaintiffs' argument, 49 U.S.C.
§ 1154(a) provides:

> (1)(C) Except as provided by this subsection, a
> party in a judicial proceeding may not use
> discovery to obtain a cockpit or surface vehicle
> recorder recording.
>
> (3) Except as provided in paragraph (4)(A) of
> this subsection, a court may allow discovery by a
> party of a cockpit or surface vehicle recorder
> recording, including with regard to a video
> recording any still image that the National
> Transportation Safety Board has not made
> available to the public under section 1114(c) or
> 1114(d) of this title, if, after an in camera
> review of the recording, the court decides that—
>
>> (A) the parts of the transcript made
>> available to the public under section
>> 1114(c) or 1114(d) of this title and to the
>> party through discovery under paragraph (2)
>> of this subsection do not provide the party
>> with sufficient information for the party to
>> receive a fair trial; and
>>
>> (B) discovery of the cockpit or surface
>> vehicle recorder recording, including with
>> regard to a video recording any still image
>> that the National Transportation Safety
>> Board has not made available to the public
>> under section 1114(c) or 1114(d) of this
>> title, is necessary to provide the party
>> with sufficient information for the party to
>> receive a fair trial.
>
> (4)(A) When a court allows discovery in a
> judicial proceeding of a still image or a part of
> a cockpit or surface vehicle recorder transcript
> not made available to the public under section
> 1114(c) or 1114(d) of this title or a cockpit or
> surface vehicle recorder recording, the court
> shall issue a protective order—

held the CVR recording discoverable, since it is likely to lead to the discovery of evidence that is relevant to the allegations of the parties involved."  Id. at 16 (citing eight pan-United States federal and state court decisions[5]).

To evaluate whether an agency has properly invoked Exemption 3, the Court must first determine whether the claimed statute is a statute of FOIA exemption, and second whether the withheld material satisfies the criteria of that exemption statute.  See C.I.A. v. Sims, 471 U.S. 159, 167 (1985).

The first part of the test is straightforward in this case, and the Court finds that the CVR statute is one that is

_____

(i) to limit the use of the still image, the part of the transcript, or the recording to the judicial proceeding; and

(ii) to prohibit dissemination of the still image, the part of the transcript, or the recording to any person that does not need access to the still image, the part of the transcript, or the recording for the proceeding.

[5]      Those decisions are:  McCoy v. Southwest Airlines Co., 208 F.R.D. 617 (C.D. Cal. 2002); Buschmann v. Little Rock National. Airport, 222 F.R.D. 114 (N.D. Tex. 2004); In re Air Crash at Lexington, Kentucky, August 27, 2006, No. CIV.A. 5:06-CV316-KSF, 2007 WL 4321865 (E.D. Ky. Dec. 6, 2007); In re September 11 Litigation, No. 02 CIV. 7912 (AKH), 2007 WL 2668608 (S.D.N.Y. Sept. 12, 2007); Wandel v. American Airlines, Inc., No. 052-00275, slip op. (Mo. St. Louis Cir. Ct. Apr. 18, 2007); In Re Aircrash Near Roselawn, Indiana, MDL-1070, No. 95 C 4593, slip op. (N.D. Ill. Dec. 4, 1996); McCoy v. USAir, Inc., No. 94L11726, slip op. (Ill. Cook Cnty. Dec. 23, 1997); and In Re Air Crash Disaster at John F. Kennedy International Airport, 687 F.2d 626 (2d Cir. 1982).

covered by Exemption 3.  By its plain terms, § 1114(c)(1)

prohibits the NTSB from disclosing the video, and leaves the

NTSB with no discretion on the issue.  Therefore, this statute

is an Exemption 3 statute.

The second part of the test is less straightforward in

this case.  The plain text of the Exemption 3 statute does not

state that it covers video recordings made by a cell phone

camera.  Thus, the inquiry turns on whether the Court agrees

with the NTSB's interpretation that "the term 'cockpit voice or

video recorder recording' in § 1114(c)(1) . . . include[s]

videos of the interior of the cockpit taken with a cell phone."

ECF No. 51 at 12-13.  The NTSB argues that its interpretation

"is reasonable and entitled to deference."  Id. (citing e.g.,

C.I.A. v. Sims, 471 U.S. at 173-74, and Aronson v. I.R.S., 973

F.2d 962, 965 (1st Cir. 1992)).

But should the Court defer to the NTSB's

interpretation?  The cases cited by the NTSB do not appear to

sweep as broadly as the NTSB argues, and the answer is not so

clear.

The Court is not persuaded that Sims fully supports

the NTSB's position.  Sims concerned an Exemption 3 statute that

necessarily required deference to the agency because the statute

itself indicated that the agency had broad authority on the

matter to define what were covered materials in matters of

national intelligence and secrecy, and the legislative history confirmed this result.  See Sims, 471 U.S. at 168-73.

The NTSB also cites the First Circuit's decision in Aronson, a thorough and well-reasoned opinion concerning whether the FOIA statute was trumped by the confidentiality provisions of a tax statute asserted as an Exemption 3 statute.  See Aronson, 973 F.2d at 965-67.  The court juxtaposed the purposes of the statutes:  "sunlight" is brought by the FOIA, while "clouds" of confidentiality are brought by the Exemption 3 tax statute at issue.  See id.  The court acknowledged that other courts facing the exact same issue had decided the matter "without giving the agency leeway," but the court reasoned that Congress's intent was for the confidentiality statute to control.  Id.  The court's conclusion indicated that some deference was required:  "once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA de novo review normally ends."  Id. at 967 (emphasis added).

But other Circuits have rejected the First Circuit's approach in Aronson, and have ruled that there is no deference to an agency's interpretation when considering Exemption 3 statutes.  See, e.g., Carlson v. U.S. Postal Serv., 504 F.3d 1123, 1126-27 (9th Cir. 2007).  In Carlson, the Ninth Circuit

12

explained that its own precedent, which predated the Aronson

opinion, required no deference because it was "the court's

responsibility to ensure that agencies do not interpret

exemptions too broadly, [therefore] deference appears

inappropriate in the FOIA context."  Id. at 1127 (quoting

Lessner v. U.S. Dep't of Commerce, 827 F.2d 1333, 1335 (9th Cir.

1987).

        The parties did not cite, and the Court is not aware

of, Third Circuit precedent that directly answers whether the

NTSB should be afforded deference in its interpretation of an

Exemption 3 statute.  Those cases that consider FOIA do not

definitively decide the deference issues raised by the NTSB's

argument.  See, e.g., Houghton v. Nat'l Sec. Agency, 378 F.

App'x 235, 238 (3d Cir. 2010) ("To evaluate an Agency's

Exemption Three claim, a court must determine whether the

claimed statute is a statute of exemption under FOIA, and

whether the withheld material satisfies the criteria of the

exemption statute." (citing Sims, 471 U.S. at 167)); McDonnell,

4 F.3d at 1249 ("[T]he Government bears the burden of

establishing that the withheld material falls within the scope

of the federal statute upon which it relies."); Grasso v.

I.R.S., 785 F.2d 70, 72-75 (3d Cir. 1986) (ruling that a request

for disclosure was governed by the FOIA and not the tax statute,

but remaining silent on whether there is some deference); Ferri,

645 F.2d at 1221 ("In light of [the de novo determination] mandate, courts generally should not pay special deference to the agency's findings.").

Absent clear direction from controlling case law, the Court returns to the text of the FOIA statute, which requires a court to "determine the matter de novo."  5 U.S.C. § 552(a)(4)(B).  The "matter" necessarily includes all of the factual and legal decisions made by an agency, but the NTSB's deference argument requires the Court to parse the command of conducting de novo review to mean only part of the agency's decision is reviewed rather than the matter as a whole.  Without more guidance from the FOIA statute itself or an asserted Exemption 3 statute (as was the case in Sims), the Court is not confident that such parsing is the appropriate default mode of analysis.

While the issue of deference remains unclear, even if the Court does not give deference to the agency's interpretation, the Court finds that cell phone video falls within the material covered by the asserted Exemption 3 statute, 49 U.S.C. § 1114(c)(1).  Whether a video is recorded by a device that is attached to the aircraft or is handheld, to the extent video footage of the cockpit is recorded, any differences between the devices are irrelevant.  What is important is the prohibition on disclosure of recordings made of the cockpit:

the manner of recording is immaterial.  This view is further

supported by Plaintiffs' explanation that the cell phone video

would generally show exactly the types of information captured

by a fixed or built-in cockpit video recorder.  See ECF No. 52-1

at 6.

All that is left to discuss is Plaintiffs' "exemption-

to-the-exemption" argument.  Given that the Court has found that

there is an absolute prohibition imposed by § 1114(c)(1), access

to the materials under the FOIA is foreclosed, and so the Court

need not address this argument.[6]

_____

[6]      In any case, Plaintiffs misapprehend the scope and
purpose of the statute they cite, 49 U.S.C. § 1154(a), as
authorizing disclosure of the video.

As the NTSB correctly states, § 1154(a) applies to
litigation over aircraft crashes, not litigation over FOIA
access.  Indeed, the text of § 1154(a) restricts its
applicability by stating that "[e]xcept as provided by this
subsection, a party in a judicial proceeding may not use
discovery . . . ."  49 U.S.C. § 1154(a)(1).  And before a court
presiding over the case in which discovery is requested can
order the NTSB to produce a CVR recording, the court must
determine whether "discovery . . . is necessary to provide the
party with sufficient information for the party to receive a
fair trial."  Id. § 1154(a)(3)(B).  A court that is not
presiding over the aircraft litigation cannot be expected to
determine what information the requesting party needs.

At least one district court has found that the
forerunner to § 1154(a) did not require disclosure of the CVR
recordings.  In McGilvra v. National Transportation Safety
Board, 840 F. Supp. 100 (D. Colo. 1993), cited by the NTSB, the
court faced a FOIA request for the CVR tape from an aircraft
crash.  At the time the FOIA request was made, litigation over
the aircraft crash was pending in an Illinois state court.
McGilvra, 840 F. Supp. at 101.  The federal court ruled that

**C.   Exemption 4**

Under Exemption 4, an agency may withhold materials that are:

> **trade secrets and commercial or financial information obtained from a person and privileged or confidential.**

5 U.S.C. § 552(b)(4).

Plaintiffs did not argue in their opposition briefing that the NTSB had improperly withheld materials under Exemption 4. See ECF No. 52-1.

The Court agrees with the NTSB that Exemption 4 applies to the withheld record that contains "commercial information about an aircraft component." ECF No. 51 at 16; Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 319 (D.C. Cir. 2006).

**D.   Exemption 5**

Under Exemption 5, an agency may withhold materials that are:

> **inter-agency or intra-agency memorandums or letters that would not be available by law to a**

---

"[t]he determination whether the [video] is discoverable by a party to plane crash litigation is a question that must be addressed to the court where that litigation is pending. . . . The FOIA does not grant this court authority to order discovery in a case that is not pending before it." Id. at 103 (emphasis added).

Although Plaintiffs were able to cite a litany of cases in which production was ordered, see supra n.2, those cases all concerned aircraft crash litigation and not FOIA litigation, rendering those decisions inapposite.

**party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.**

5 U.S.C. § 552(b)(5).

The NTSB argues that these materials are exempted as being privileged documents that reflect the NTSB's deliberative process in determining the circumstances of the accidents and in developing safety recommendations. ECF No. 51 at 18-23. Further, the NTSB argues that the deliberative process privilege is not limited to documents related to a policy decision, and that factual information is also protected. Id. at 24-27.

Plaintiffs argue that Exemption 5 does not apply because the documents are unrelated to a policy decision. ECF No. 52-1 at 10-11. Plaintiffs also argue that factual materials are not protected. Id. at 12.

Exemption 5 "encompasses the traditional discovery privileges, including the deliberative process privilege, which 'protects agency documents that are both predecisional and deliberative.'" Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 183 (3d Cir. 2007) (quoting Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006); citing Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).

To decide whether the predecisional privilege applies, a court must determine whether the document "was generated before the adoption of an agency policy," or other decision, and whether the document "reflects the give-and-take of the consultative process." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. Such documents "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." Id.

An agency does not have to identify a specific decision in order to invoke Exemption 5. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975). However, the agency must identify "what deliberative process is involved, and the role played by the documents." Coastal States Gas Corp., 617 F.2d at 868.

Exemption 5 still applies to predecisional materials even after a decision has been made:

> The purpose of the privilege for predecisional
> deliberations is to insure that a decisionmaker
> will receive the unimpeded advice of his
> associates. The theory is that if advice is
> revealed, associates may be reluctant to be

> candid and frank.  It follows that documents
> shielded by executive privilege remain privileged
> even after the decision to which they pertain may
> have been effected, since disclosure at any time
> could inhibit the free flow of advice, including
> analysis, reports, and expression of opinion
> within the agency.

Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 359-60 (1979).

The privilege also protects the work done by consultants on behalf of the agency.  See, e.g., McKinley v. Bd. of Governors of Fed. Reserve Sys., 647 F.3d 331, 336-39 (D.C. Cir. 2011).

"Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an 'exercise of discretion and judgment calls.'"  Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting Mapother v. Dep't of Justice, 3 F.3d 1533, 1539 (D.C. Cir. 1993)).  "[T]he selection or organization of facts" may be "part of an agency's deliberative process," and thus exempt under Exemption 5.  Id. (citing Montrose Chem. Corp. of Cal. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974)).  Thus, the D.C. Circuit has held that non-disclosure was proper where a report's factual material had been "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action."  Mapother, 3 F.3d at 1539.

The privilege applies to agency decisions that are not a policy decision. <u>Klamath</u>, 532 U.S. at 8 ("[D]eliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental <u>decisions and policies</u> are formulated." (emphasis added)(internal quotation marks omitted)).

Several circuit decisions confirm not only that the privilege applies to decisions that are not formally policy, but in particular to investigations of aircraft accidents by various agencies. The D.C. Circuit affirmed a ruling that "predecisional material from aircraft accident investigations" was properly withheld "under the deliberative process privilege incorporated into Exemption 5." <u>Badhwar v. U.S. Dep't of Air Force</u>, 829 F.2d 182, 183, 184-85 (D.C. Cir. 1987).

The Ninth Circuit has also considered whether Exemption 5 had been properly invoked in a case involving an aircraft accident. <u>Lahr v. Nat'l Transp. Safety Bd.</u>, 569 F.3d 964 (9th Cir. 2009). The court ruled that certain documents were part of the predecisional process where those documents had been prepared "for the specific purpose of aiding the agency in its determination of the likely flight path of the aircraft following the explosion, a determination central to the [agency's] task of explaining what [happened]," and that discussed "estimates of the aircraft's flight path, [and]

reviews those estimates and makes recommendations." Id. at 982-83. Because those documents exposed the thought processes of the agency, including evaluations of data and calculations, the privilege applied. Id. at 982-84.

The Court finds that the materials at issue are protected by the predecisional privilege. First, the NTSB is investigating various accidents, and has not yet issued a finding or recommendation as a result of the investigation. It is of no moment that the process may not result in an adjudication or the adoption of a policy; rather, the deliberative process is at work, has yet to be completed, and will likely result in the issuance of a report with recommendations.

Second, the materials reflect the give-and-take of the consultative process, including draft documents and correspondence containing questions and answers. To the extent the materials have factual information, they are still protected because they represent agency workers' discretion and judgment calls, for example through the selection, interpretation, or manipulation to generate other factual bases for further use. See Ancient Coin Collectors Guild, 641 F.3d at 513; Lahr, 569 F.3d at 982-83.

The Court finds that the NTSB properly withheld the materials identified under Exemption 5.

**E.  Exemption 6**

Under Exemption 6, an agency may withhold materials that are:

> **personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.**

5 U.S.C. § 552(b)(6).

Exemption 6 protects privacy interests of individuals, whether the individuals are alive or dead.  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 167 (2004).

The NTSB argues that the materials at issue here include photographs "depicting mutilated human remains, autopsy reports, and medical case reviews," and are thus "personnel, medical and similar files" covered by Exemption 6.  ECF No. 51 at 29.

Plaintiffs make a one-paragraph argument calling for the Court to apply relevant case law and to balance the public interest in disclosure against privacy interests.  ECF No. 52-1 at 13.  Plaintiffs do not claim to have a direct and personal interest in the Exemption 6 materials.  See id.

In the Third Circuit, to determine whether disclosure under the FOIA is required, a court must "determine whether the information sought is subject to privacy protection and, if so, whether the invasion of privacy is 'clearly unwarranted.'  This inquiry involves a balancing of the public interest served by

disclosure against the harm resulting from the invasion of privacy." Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. & Urban Dev., 852 F.2d 87, 89 (3d Cir. 1988), holding modified by Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891 (3d Cir. 1998).

"[T]he reason for which [a plaintiff] seeks disclosure of the medical records [and similar files] at issue . . . is irrelevant to whether disclosure is proper." McDonnell, 4 F.3d at 1253. "Instead, whether disclosure of a private document is warranted under Exemption 6 must turn . . . on the nature of the requested document and its relationship to the basic purpose of the [FOIA] to open agency action to the light of public scrutiny." Id. (internal quotation marks omitted) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976)). Indeed, "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." Reporters Comm., 489 U.S. at 774.

The Court finds that the strong privacy interests of the deceased and the relatives of the deceased are not outweighed by any public interest factors which are, at most, minimal. The documents reveal little-to-nothing at all about

the agency's activities and conduct, rather the documents

concern medical issues and medical opinions.  Accordingly, the

death scene photographs, autopsy reports, and medical case

reviews were properly withheld under Exemption 6.

### F.    Aircraft wreckage & Chain of custody documents

The NTSB did not move for summary judgment on

Plaintiffs' request for pieces of the aircraft wreckage or

documents relating to the wreckage.  See ECF No. 16 ¶ 13, Prayer

for Relief to Count II.

Plaintiffs argue that in light of the NTSB's silence

on this issue, the Court should order "such components [to] be

produced, or information as to their chain of custody [to] be

presented to the Plaintiffs."  ECF No. 52-1 at 17.[7]

---

[7]       "FOIA cases typically and appropriately are decided on
motions for summary judgment."  Defs. of Wildlife v. U.S. Border
Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); see also, Rimmer
v. Holder, 700 F.3d 246, 255 (6th Cir. 2012); Cooper Cameron
Corp. v. U.S. Dep't of Labor, Occupational Safety & Health
Admin., 280 F.3d 539, 543 (5th Cir. 2002); Samahon v. F.B.I., 40
F. Supp. 3d 498, 502 (E.D. Pa. 2014).  This case is no
different.  On September 12, 2017, the Court held a status and
scheduling conference during which the Court explained that the
merits of Plaintiffs' FOIA requests would be resolved through
summary judgment.  See ECF No. 37 at 19.  The NTSB stated that
it had "completed its production" in this case, and that it had
asserted exemptions as it believed were appropriate.  Id.
Accordingly, the NTSB indicated that all issues in this case
could be resolved following briefing.  The NTSB filed a "Motion
for Summary Judgment," rather than a motion for partial summary
judgment; moreover, the NTSB's proposed order stated that the
case would be closed, should the Court find in favor of the
NTSB.  See ECF No. 51, Proposed Order.  Furthermore, despite
receiving clear notice from Plaintiffs that it had not briefed

On April 9, 2019, the Court granted relief to
Plaintiffs by ordering the production of the wreckage and chain
of custody documents.  ECF No. 56 ¶ 2.  The NTSB moved for
reconsideration of the Order, arguing that the request for the
wreckage and documents was not before the Court.  ECF No. 59.
The NTSB also argued that, in any event, FOIA requests do not
concern physical evidence because those are agency records, and
there were no chain of custody records that had not been
produced.

The Court granted the NTSB's motion for
reconsideration.  ECF No. 62.  As a threshold matter, the NTSB
is incorrect in its assertion that the FOIA request was not
before the Court.  See id.; ECF No. 16 ¶¶ 13, 123-38.  However,
the NTSB is correct that the Court cannot order the production
of the wreckage under the FOIA because it is not an agency
record.  See ECF No. 62.  Furthermore, although the chain of
custody records were the proper subject matter of Plaintiffs'
FOIA request, Plaintiffs failed to respond to the NTSB's
argument that all such records had been produced to Plaintiffs,
belying the need for further production.  See id.

---

the Court about the wreckage or related documents, the NTSB
failed to seek leave to file a reply brief addressing
Plaintiffs' arguments.  In light of the foregoing, the Court
finds that the merits of all of the issues raised by Plaintiffs
are squarely before the Court and can be ruled on.

Additionally, whatever the merits of Plaintiffs'
arguments concerning their requests under 49 C.F.R. Part 837,
such claims were not before the Court.  See ECF No. 29-1 ¶¶ 146-
52 (erroneously seeking relief pursuant to "14 C.F.R. § 837.4");
ECF No. 46 (denying leave to file a Second Amended Complaint).


## IV.  CONCLUSION

The Court has reviewed the NTSB's Vaughn index and the
withheld materials and finds that stated FOIA exemptions apply.
The Court also finds that it cannot order production of the
Goldstein aircraft wreckage pursuant to the FOIA.  Finally,
Plaintiffs have failed to show that they have not been provided
with chain of custody records or that any such records have been
withheld and could be ordered to be produced under the FOIA.
Accordingly, the Court will grant the NTSB's motion for summary
judgment.

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


THE WOLK LAW FIRM,                 :  CIVIL ACTION
DON GOLDSTEIN, and                 :  NO. 16-05632
INGRID GOLDSTEIN,                  :
                                   :
        Plaintiffs,                :
                                   :
v.                                 :
                                   :
UNITED STATES OF AMERICA           :
NATIONAL TRANSPORTATION SAFETY     :
BOARD,                             :
                                   :
        Defendant.                 :


                       **M E M O R A N D U M**


EDUARDO C. ROBRENO, J.                  <u>JUNE 18</u><s>APRIL 9</s>, 2019



**I.     INTRODUCTION**

        Plaintiffs are a law firm retained to represent

aircraft accident victims and their families, and the parents of

Mark Goldstein, an aircraft accident victim.  ECF No. 16 ¶¶ 1,

3.  The Amended Complaint only identifies the Goldstein family

as clients of the law firm.  <u>Id.</u> ¶ 4.

        Plaintiffs filed this suit against the National

Transportation Safety Board (NTSB) because the NTSB has denied

Plaintiffs' Freedom of Information Act (FOIA) requests[8] for documents related to seven aircraft accident investigations.[9] See id. ¶¶ 10-14. Plaintiffs requested the NTSB to produce various types of materials, including "investigation materials," "missing pieces of the [Goldstein] accident aircraft wreckage," "logbooks and video footage of the accident," and "data download from equipment onboard the accident aircraft." See id. ¶ 13.

Earlier in the litigation, the Court granted the NTSB's motion to dismiss Count I -- "Obstruction of Justice and Violation of Due Process". See ECF No. 15. Only Count II remains in this case -- "Violation of the Freedom of Information Act".

---

[8]     Plaintiffs filed their FOIA requests because they have a particular interest in the information sought. However, the FOIA does not require a requestor to have peculiar interests, rather "the identity of the requesting party has no bearing on the merits of his or her FOIA request." U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 771 (1989). Indeed, Congress "clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest in a particular document." Id. (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)) (quotation marks and alterations omitted). Put another way, neither a noble nor a nefarious purpose will alter the scope of materials available under the FOIA.

[9]     According to the NTSB, the investigations have been completed.

       During this case, Plaintiffs informed the Court that they were involved in litigation over these aircraft accidents. According to Plaintiffs, the aircraft accident litigation is still active.

The NTSB filed a motion for summary judgment. ECF No. 51. The NTSB's briefing includes a "Vaughn" index, ECF No. 51-1, that describes the nature of the materials it continues to withhold from Plaintiffs and the reason why those materials are being withheld. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The NTSB also submitted copies of documents and videos to the Court for in camera review.

Upon consideration of the parties' arguments, and following an in camera review, the Court finds that the NTSB properly denied Plaintiffs' FOIA requests for the documents and videos. ~~However, the Court finds that in this case, information concerning the wreckage and the wreckage itself has not been argued to be exempt under the FOIA, and so must be produced.~~

Furthermore, the Court is not authorized under the FOIA to order the production of the aircraft wreckage because it is not an agency record, and the NTSB has not withheld chain of custody documents concerning the wreckage.

## II.  LAW

The FOIA confers federal jurisdiction to enjoin a federal agency from withholding agency records that are improperly being withheld.  5 U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (explaining that federal jurisdiction exists to determine whether there are improperly withheld agency records).  "For purposes of the FOIA,

the term 'records' does not include tangible objects."  Friedman

v. U.S. Secret Serv., 923 F. Supp. 2d 262, 275 (D.D.C. 2013).

      The "FOIA creates a presumption favoring disclosure"

of Government documents.  Manna v. U.S. Dep't of Justice, 51

F.3d 1158, 1163 (3d Cir. 1995).  Furthermore, as a predicate to

granting FOIA relief, the agency records must have been

withheld.  See 5 U.S.C. § 552(a)(4)(B); Tax Analysts, 492 U.S.

at 142.  However, certain categories of documents are exempt

from the FOIA's production requirements, i.e., an agency may

withhold materials that fall within one or more of the nine

enumerated exemptions.  See 5 U.S.C. § 552(b).  As relevant to

this case, by statutory exemption number, the FOIA does not

apply to matters and materials that are:

> (2) related solely to the internal personnel
> rules and practices of an agency;
>
> (3) specifically exempted from disclosure by
> statute if that statute requires that the matters
> be withheld from the public in such a manner as
> to leave no discretion on the issue or
> establishes particular criteria for withholding
> or refers to particular types of matters to be
> withheld;
>
> (4) trade secrets and commercial or financial
> information obtained from a person and privileged
> or confidential;
>
> (5) inter-agency or intra-agency memorandums or
> letters that would not be available by law to a
> party other than an agency in litigation with the
> agency, provided that the deliberative process
> privilege shall not apply to records created 25
> years or more before the date on which the
> records were requested; and

(6) personnel and medical files and similar files
the disclosure of which would constitute a
clearly unwarranted invasion of personal privacy.

<u>Id.</u>

A district court reviews an agency's use of a FOIA

exemption to withhold documents <u>de novo</u>.  <u>Id.</u> § 552(a)(4)(B).

The agency has the burden of showing that a statutory

exemption applies.  <u>Id.</u>; <u>see also</u> <u>Manna</u>, 51 F.3d at 1163 (citing

<u>McDonnell v. United States</u>, 4 F.3d 1227, 1241 (3d Cir. 1993)).

The agency can sustain its burden under the FOIA by

submitting a detailed explanation, that can take many different

forms and combinations, that "describe[s] the material withheld

and detail[s] why it fits within the claimed exemption."

<u>McDonnell</u>, 4 F.3d at 1241; <u>Lame v. U.S. Dep't of Justice</u>, 654

F.2d 917, 922 (3d Cir. 1981) ("[T]the district court must have

furnished to it, in whatever form, public or private, all of the

detailed justifications advanced by the government for non-

disclosure.").  The court may order the agency to submit copies

of the withheld materials for <u>in camera</u> review.  5 U.S.C.

§ 552(a)(4)(B); <u>see also</u> <u>Ferri v. Bell</u>, 645 F.2d 1213, 1225–26

(3d Cir. 1981), <u>modified</u>, 671 F.2d 769 (3d Cir. 1982).

The agency is entitled to summary judgment in a FOIA

case if the agency "describe[s] the withheld information and the

justification for withholding [it] with reasonable specificity,

demonstrating a logical connection between the information and

the claimed exemption" and the agency's submissions in support of withholding "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Manna, 51 F.3d at 1163-64 (quoting Am. Friends Serv. Comm. v. Dep't of Def., 831 F.2d 441, 444 (3d Cir. 1987)). The court may also grant summary judgment after in camera review. See Lame v. U.S. Dep't of Justice, 767 F.2d 66, 71-72 (3d Cir. 1985); Cuccaro v. Sec'y of Labor, 770 F.2d 355, 356-57, 361 (3d Cir. 1985).

## III. DISCUSSION

Plaintiffs seek the production of documents and other materials in connection with seven NTSB aircraft accident investigations. See ECF No. 51 at 4-7; ECF No. 52-1 at 2. In support of its motion for summary judgment, the NTSB identified and argued the applicability of at least one of Exemptions 2, 3, 4, 5, or 6 as the basis for withholding each of the materials listed in the Vaughn index. See ECF No. 51-1. The majority of the materials were withheld pursuant to Exemption 5. See id. In some instances, Exemptions 5 and 6 are asserted. ~~The NTSB made no arguments concerning the Goldstein aircraft accident wreckage or information about the wreckage.~~

Below, the Court addresses by exemption category whether the asserted exemptions properly apply to the withheld materials.

**A.  Exemption 2**

Under Exemption 2, an agency may withhold materials that are:

> **related solely to the internal personnel rules and practices of an agency.**

5 U.S.C. § 552(b)(2).

Plaintiffs did not argue in their opposition briefing that the NTSB had improperly withheld materials under Exemption 2.  <u>See</u> ECF No. 52-1.

The Court agrees with the NTSB that Exemption 2 applies to the withheld communications that concern requests for "compensatory and overtime pay for work during the investigation."  ECF No. 51 at 11; <u>see</u> <u>Milner v. Dep't of Navy</u>, 562 U.S. 562, 570 & n.4, 581 (2011).

**B.  Exemption 3**

Under Exemption 3, an agency may withhold materials that are:

> **specifically exempted from disclosure by statute if that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or establishes particular criteria for withholding or refers to particular types of matters to be withheld.**

5 U.S.C. § 552(b)(3).

The NTSB argues that a video taken by a passenger on the aircraft using a cell phone is exempted from disclosure by statute.  ECF No. 51 at 12.  The statute, 49 U.S.C. § 1114(c),

prohibits the NTSB from disclosing a recording made by cockpit
video recorder (CVR):

> [The NTSB] may not disclose publicly any part of
> a cockpit voice or video recorder recording or
> transcript of oral communications by and between
> flight crew members and ground stations related
> to an accident or incident investigated by the
> [NTSB].

49 U.S.C. § 1114(c)(1) (emphasis added).

The NTSB further argues that the CVR statute falls
within the ambit of Exemption 3 because, by the terms of the
statute, the NTSB has no discretion on the issue of disclosure.
ECF No. 51 at 12-13.

As to whether the cell phone video at issue qualifies
as a CVR recording, the NTSB argues that it interprets the
statute to include "videos of the interior of the cockpit taken
with a cell phone." Id. The NTSB further argues that it is
entitled to deference on this interpretation. Id.

In response, Plaintiffs do not rebut any of the NTSB's
arguments that the CVR statute is an Exemption 3 statute, the
NTSB correctly interpreted the CVR statute, or that the cell
phone video is CVR statute material. Instead, Plaintiffs
respond that Congress "has explicitly authorized courts to order
production of onboard video under 49 U.S.C. § 1154." ECF No.
52-1 at 5. Plaintiffs argue that "under 49 U.S.C. § 1154, the
video recording may be produced in discovery," provided certain

conditions are met.[10]  Id. at 14-15.  Plaintiffs further argue

that "virtually every court that has addressed the issue has

---

[10]     Of relevance to Plaintiffs' argument, 49 U.S.C.
§ 1154(a) provides:

> (1)(C) Except as provided by this subsection, a
> party in a judicial proceeding may not use
> discovery to obtain a cockpit or surface vehicle
> recorder recording.
>
> (3) Except as provided in paragraph (4)(A) of
> this subsection, a court may allow discovery by a
> party of a cockpit or surface vehicle recorder
> recording, including with regard to a video
> recording any still image that the National
> Transportation Safety Board has not made
> available to the public under section 1114(c) or
> 1114(d) of this title, if, after an in camera
> review of the recording, the court decides that—
>
>> (A) the parts of the transcript made
>> available to the public under section
>> 1114(c) or 1114(d) of this title and to the
>> party through discovery under paragraph (2)
>> of this subsection do not provide the party
>> with sufficient information for the party to
>> receive a fair trial; and
>>
>> (B) discovery of the cockpit or surface
>> vehicle recorder recording, including with
>> regard to a video recording any still image
>> that the National Transportation Safety
>> Board has not made available to the public
>> under section 1114(c) or 1114(d) of this
>> title, is necessary to provide the party
>> with sufficient information for the party to
>> receive a fair trial.
>
> (4)(A) When a court allows discovery in a
> judicial proceeding of a still image or a part of
> a cockpit or surface vehicle recorder transcript
> not made available to the public under section
> 1114(c) or 1114(d) of this title or a cockpit or
> surface vehicle recorder recording, the court
> shall issue a protective order—

held the CVR recording discoverable, since it is likely to lead to the discovery of evidence that is relevant to the allegations of the parties involved." Id. at 16 (citing eight pan-United States federal and state court decisions[11]).

To evaluate whether an agency has properly invoked Exemption 3, the Court must first determine whether the claimed statute is a statute of FOIA exemption, and second whether the withheld material satisfies the criteria of that exemption statute. See C.I.A. v. Sims, 471 U.S. 159, 167 (1985).

The first part of the test is straightforward in this case, and the Court finds that the CVR statute is one that is

---

(i) to limit the use of the still image, the part of the transcript, or the recording to the judicial proceeding; and

(ii) to prohibit dissemination of the still image, the part of the transcript, or the recording to any person that does not need access to the still image, the part of the transcript, or the recording for the proceeding.

[11]     Those decisions are:  McCoy v. Southwest Airlines Co., 208 F.R.D. 617 (C.D. Cal. 2002); Buschmann v. Little Rock National. Airport, 222 F.R.D. 114 (N.D. Tex. 2004); In re Air Crash at Lexington, Kentucky, August 27, 2006, No. CIV.A. 5:06-CV316-KSF, 2007 WL 4321865 (E.D. Ky. Dec. 6, 2007); In re September 11 Litigation, No. 02 CIV. 7912 (AKH), 2007 WL 2668608 (S.D.N.Y. Sept. 12, 2007); Wandel v. American Airlines, Inc., No. 052-00275, slip op. (Mo. St. Louis Cir. Ct. Apr. 18, 2007); In Re Aircrash Near Roselawn, Indiana, MDL-1070, No. 95 C 4593, slip op. (N.D. Ill. Dec. 4, 1996); McCoy v. USAir, Inc., No. 94L11726, slip op. (Ill. Cook Cnty. Dec. 23, 1997); and In Re Air Crash Disaster at John F. Kennedy International Airport, 687 F.2d 626 (2d Cir. 1982).

covered by Exemption 3.  By its plain terms, § 1114(c)(1) prohibits the NTSB from disclosing the video, and leaves the NTSB with no discretion on the issue.  Therefore, this statute is an Exemption 3 statute.

The second part of the test is less straightforward in this case.  The plain text of the Exemption 3 statute does not state that it covers video recordings made by a cell phone camera.  Thus, the inquiry turns on whether the Court agrees with the NTSB's interpretation that "the term 'cockpit voice or video recorder recording' in § 1114(c)(1) . . . include[s] videos of the interior of the cockpit taken with a cell phone." ECF No. 51 at 12-13.  The NTSB argues that its interpretation "is reasonable and entitled to deference."  Id. (citing e.g., C.I.A. v. Sims, 471 U.S. at 173-74, and Aronson v. I.R.S., 973 F.2d 962, 965 (1st Cir. 1992)).

But should the Court defer to the NTSB's interpretation?  The cases cited by the NTSB do not appear to sweep as broadly as the NTSB argues, and the answer is not so clear.

The Court is not persuaded that Sims fully supports the NTSB's position.  Sims concerned an Exemption 3 statute that necessarily required deference to the agency because the statute itself indicated that the agency had broad authority on the matter to define what were covered materials in matters of

national intelligence and secrecy, and the legislative history

confirmed this result.  See Sims, 471 U.S. at 168-73.

The NTSB also cites the First Circuit's decision in

Aronson, a thorough and well-reasoned opinion concerning whether

the FOIA statute was trumped by the confidentiality provisions

of a tax statute asserted as an Exemption 3 statute.  See

Aronson, 973 F.2d at 965-67.  The court juxtaposed the purposes

of the statutes:  "sunlight" is brought by the FOIA, while

"clouds" of confidentiality are brought by the Exemption 3 tax

statute at issue.  See id.  The court acknowledged that other

courts facing the exact same issue had decided the matter

"without giving the agency leeway," but the court reasoned that

Congress's intent was for the confidentiality statute to

control.  Id.  The court's conclusion indicated that some

deference was required:  "once a court determines that the

statute in question is an Exemption 3 statute, and that the

information requested at least arguably falls within the

statute, FOIA de novo review normally ends."  Id. at 967

(emphasis added).

But other Circuits have rejected the First Circuit's

approach in Aronson, and have ruled that there is no deference

to an agency's interpretation when considering Exemption 3

statutes.  See, e.g., Carlson v. U.S. Postal Serv., 504 F.3d

1123, 1126-27 (9th Cir. 2007).  In Carlson, the Ninth Circuit

explained that its own precedent, which predated the <u>Aronson</u>
opinion, required no deference because it was "the court's
responsibility to ensure that agencies do not interpret
exemptions too broadly, [therefore] deference appears
inappropriate in the FOIA context."  <u>Id.</u> at 1127 (quoting
<u>Lessner v. U.S. Dep't of Commerce</u>, 827 F.2d 1333, 1335 (9th Cir.
1987).

        The parties did not cite, and the Court is not aware
of, Third Circuit precedent that directly answers whether the
NTSB should be afforded deference in its interpretation of an
Exemption 3 statute.  Those cases that consider FOIA do not
definitively decide the deference issues raised by the NTSB's
argument.  <u>See, e.g.</u>, <u>Houghton v. Nat'l Sec. Agency</u>, 378 F.
App'x 235, 238 (3d Cir. 2010) ("To evaluate an Agency's
Exemption Three claim, a court must determine whether the
claimed statute is a statute of exemption under FOIA, and
whether the withheld material satisfies the criteria of the
exemption statute." (citing <u>Sims</u>, 471 U.S. at 167)); <u>McDonnell</u>,
4 F.3d at 1249 ("[T]he Government bears the burden of
establishing that the withheld material falls within the scope
of the federal statute upon which it relies."); <u>Grasso v.
I.R.S.</u>, 785 F.2d 70, 72-75 (3d Cir. 1986) (ruling that a request
for disclosure was governed by the FOIA and not the tax statute,
but remaining silent on whether there is some deference); <u>Ferri</u>,

645 F.2d at 1221 ("In light of [the de novo determination] mandate, courts generally should not pay special deference to the agency's findings.").

Absent clear direction from controlling case law, the Court returns to the text of the FOIA statute, which requires a court to "determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). The "matter" necessarily includes all of the factual and legal decisions made by an agency, but the NTSB's deference argument requires the Court to parse the command of conducting de novo review to mean only part of the agency's decision is reviewed rather than the matter as a whole. Without more guidance from the FOIA statute itself or an asserted Exemption 3 statute (as was the case in Sims), the Court is not confident that such parsing is the appropriate default mode of analysis.

While the issue of deference remains unclear, even if the Court does not give deference to the agency's interpretation, the Court finds that cell phone video falls within the material covered by the asserted Exemption 3 statute, 49 U.S.C. § 1114(c)(1). Whether a video is recorded by a device that is attached to the aircraft or is handheld, to the extent video footage of the cockpit is recorded, any differences between the devices are irrelevant. What is important is the prohibition on disclosure of recordings made of the cockpit:

the manner of recording is immaterial.  This view is further

supported by Plaintiffs' explanation that the cell phone video

would generally show exactly the types of information captured

by a fixed or built-in cockpit video recorder.  <u>See</u> ECF No. 52-1

at 6.

All that is left to discuss is Plaintiffs' "exemption-

to-the-exemption" argument.  Given that the Court has found that

there is an absolute prohibition imposed by § 1114(c)(1), access

to the materials under the FOIA is foreclosed, and so the Court

need not address this argument.[12]

_____

[12]    In any case, Plaintiffs misapprehend the scope and
purpose of the statute they cite, 49 U.S.C. § 1154(a), as
authorizing disclosure of the video.

As the NTSB correctly states, § 1154(a) applies to
litigation over aircraft crashes, not litigation over FOIA
access.  Indeed, the text of § 1154(a) restricts its
applicability by stating that "[e]xcept as provided by this
subsection, a party in a judicial proceeding may not use
discovery . . . ."  49 U.S.C. § 1154(a)(1).  And before a court
presiding over the case in which discovery is requested can
order the NTSB to produce a CVR recording, the court must
determine whether "discovery . . . is necessary to provide the
party with sufficient information for the party to receive a
fair trial."  <u>Id.</u> § 1154(a)(3)(B).  A court that is not
presiding over the aircraft litigation cannot be expected to
determine what information the requesting party needs.

At least one district court has found that the
forerunner to § 1154(a) did not require disclosure of the CVR
recordings.  In <u>McGilvra v. National Transportation Safety</u>
<u>Board</u>, 840 F. Supp. 100 (D. Colo. 1993), cited by the NTSB, the
court faced a FOIA request for the CVR tape from an aircraft
crash.  At the time the FOIA request was made, litigation over
the aircraft crash was pending in an Illinois state court.
<u>McGilvra</u>, 840 F. Supp. at 101.  The federal court ruled that

**C.    Exemption 4**

Under Exemption 4, an agency may withhold materials
that are:

> **trade secrets and commercial or financial
> information obtained from a person and privileged
> or confidential.**

5 U.S.C. § 552(b)(4).

Plaintiffs did not argue in their opposition briefing
that the NTSB had improperly withheld materials under Exemption
4. See ECF No. 52-1.

The Court agrees with the NTSB that Exemption 4
applies to the withheld record that contains "commercial
information about an aircraft component." ECF No. 51 at 16;
Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312,
319 (D.C. Cir. 2006).

**D.    Exemption 5**

Under Exemption 5, an agency may withhold materials
that are:

> **inter-agency or intra-agency memorandums or
> letters that would not be available by law to a**

---

"[t]he determination whether the [video] is discoverable by a
party to plane crash litigation is a question that must be
addressed to the court where that litigation is pending. . . .
The FOIA does not grant this court authority to order discovery
in a case that is not pending before it." Id. at 103 (emphasis
added).

Although Plaintiffs were able to cite a litany of
cases in which production was ordered, see supra n.2, those
cases all concerned aircraft crash litigation and not FOIA
litigation, rendering those decisions inapposite.

16

**party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.**

5 U.S.C. § 552(b)(5).

The NTSB argues that these materials are exempted as being privileged documents that reflect the NTSB's deliberative process in determining the circumstances of the accidents and in developing safety recommendations. ECF No. 51 at 18-23. Further, the NTSB argues that the deliberative process privilege is not limited to documents related to a policy decision, and that factual information is also protected. Id. at 24-27.

Plaintiffs argue that Exemption 5 does not apply because the documents are unrelated to a policy decision. ECF No. 52-1 at 10-11. Plaintiffs also argue that factual materials are not protected. Id. at 12.

Exemption 5 "encompasses the traditional discovery privileges, including the deliberative process privilege, which 'protects agency documents that are both predecisional and deliberative.'" Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 183 (3d Cir. 2007) (quoting Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006); citing Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001)).

To decide whether the predecisional privilege applies, a court must determine whether the document "was generated before the adoption of an agency policy," or other decision, and whether the document "reflects the give-and-take of the consultative process." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. Such documents "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." Id.

An agency does not have to identify a specific decision in order to invoke Exemption 5. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975). However, the agency must identify "what deliberative process is involved, and the role played by the documents." Coastal States Gas Corp., 617 F.2d at 868.

Exemption 5 still applies to predecisional materials even after a decision has been made:

> The purpose of the privilege for predecisional
> deliberations is to insure that a decisionmaker
> will receive the unimpeded advice of his
> associates. The theory is that if advice is
> revealed, associates may be reluctant to be

> candid and frank. It follows that documents
> shielded by executive privilege remain privileged
> even after the decision to which they pertain may
> have been effected, since disclosure at any time
> could inhibit the free flow of advice, including
> analysis, reports, and expression of opinion
> within the agency.

Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 359-60 (1979).

The privilege also protects the work done by consultants on behalf of the agency. See, e.g., McKinley v. Bd. of Governors of Fed. Reserve Sys., 647 F.3d 331, 336-39 (D.C. Cir. 2011).

"Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an 'exercise of discretion and judgment calls.'" Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting Mapother v. Dep't of Justice, 3 F.3d 1533, 1539 (D.C. Cir. 1993)). "[T]he selection or organization of facts" may be "part of an agency's deliberative process," and thus exempt under Exemption 5. Id. (citing Montrose Chem. Corp. of Cal. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974)). Thus, the D.C. Circuit has held that non-disclosure was proper where a report's factual material had been "assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." Mapother, 3 F.3d at 1539.

The privilege applies to agency decisions that are not a policy decision. <u>Klamath</u>, 532 U.S. at 8 ("[D]eliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental <u>decisions and policies</u> are formulated." (emphasis added)(internal quotation marks omitted)).

Several circuit decisions confirm not only that the privilege applies to decisions that are not formally policy, but in particular to investigations of aircraft accidents by various agencies. The D.C. Circuit affirmed a ruling that "predecisional material from aircraft accident investigations" was properly withheld "under the deliberative process privilege incorporated into Exemption 5." <u>Badhwar v. U.S. Dep't of Air Force</u>, 829 F.2d 182, 183, 184-85 (D.C. Cir. 1987).

The Ninth Circuit has also considered whether Exemption 5 had been properly invoked in a case involving an aircraft accident. <u>Lahr v. Nat'l Transp. Safety Bd.</u>, 569 F.3d 964 (9th Cir. 2009). The court ruled that certain documents were part of the predecisional process where those documents had been prepared "for the specific purpose of aiding the agency in its determination of the likely flight path of the aircraft following the explosion, a determination central to the [agency's] task of explaining what [happened]," and that discussed "estimates of the aircraft's flight path, [and]

reviews those estimates and makes recommendations." Id. at 982-83.  Because those documents exposed the thought processes of the agency, including evaluations of data and calculations, the privilege applied.  Id. at 982-84.

The Court finds that the materials at issue are protected by the predecisional privilege.  First, the NTSB is investigating various accidents, and has not yet issued a finding or recommendation as a result of the investigation.  It is of no moment that the process may not result in an adjudication or the adoption of a policy; rather, the deliberative process is at work, has yet to be completed, and will likely result in the issuance of a report with recommendations.

Second, the materials reflect the give-and-take of the consultative process, including draft documents and correspondence containing questions and answers.  To the extent the materials have factual information, they are still protected because they represent agency workers' discretion and judgment calls, for example through the selection, interpretation, or manipulation to generate other factual bases for further use.  See Ancient Coin Collectors Guild, 641 F.3d at 513; Lahr, 569 F.3d at 982-83.

The Court finds that the NTSB properly withheld the materials identified under Exemption 5.

**E.   Exemption 6**

Under Exemption 6, an agency may withhold materials that are:

> **personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.**

5 U.S.C. § 552(b)(6).

Exemption 6 protects privacy interests of individuals, whether the individuals are alive or dead.  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 167 (2004).

The NTSB argues that the materials at issue here include photographs "depicting mutilated human remains, autopsy reports, and medical case reviews," and are thus "personnel, medical and similar files" covered by Exemption 6.  ECF No. 51 at 29.

Plaintiffs make a one-paragraph argument calling for the Court to apply relevant case law and to balance the public interest in disclosure against privacy interests.  ECF No. 52-1 at 13.  Plaintiffs do not claim to have a direct and personal interest in the Exemption 6 materials.  See id.

In the Third Circuit, to determine whether disclosure under the FOIA is required, a court must "determine whether the information sought is subject to privacy protection and, if so, whether the invasion of privacy is 'clearly unwarranted.'  This inquiry involves a balancing of the public interest served by

disclosure against the harm resulting from the invasion of privacy." Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. & Urban Dev., 852 F.2d 87, 89 (3d Cir. 1988), holding modified by Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs, 135 F.3d 891 (3d Cir. 1998).

"[T]he reason for which [a plaintiff] seeks disclosure of the medical records [and similar files] at issue . . . is irrelevant to whether disclosure is proper." McDonnell, 4 F.3d at 1253. "Instead, whether disclosure of a private document is warranted under Exemption 6 must turn . . . on the nature of the requested document and its relationship to the basic purpose of the [FOIA] to open agency action to the light of public scrutiny." Id. (internal quotation marks omitted) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976)). Indeed, "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." Reporters Comm., 489 U.S. at 774.

The Court finds that the strong privacy interests of the deceased and the relatives of the deceased are not outweighed by any public interest factors which are, at most, minimal. The documents reveal little-to-nothing at all about

the agency's activities and conduct, rather the documents

concern medical issues and medical opinions.  Accordingly, the

death scene photographs, autopsy reports, and medical case

reviews were properly withheld under Exemption 6.

**F.    Aircraft wreckage & Chain of custody documents**

The NTSB did not move for summary judgment on

Plaintiffs' request for pieces of the aircraft wreckage <u>or</u>

<u>documents relating to the wreckage</u>.  <u>See</u> ECF No. 16 ¶ 13, Prayer

for Relief to Count II.

Plaintiffs argue that in light of the NTSB's silence

on this issue, the Court should order "such components [to] be

produced, or information as to their chain of custody [to] be

presented to the Plaintiffs."  ECF No. 52-1 at 17.[13]

---

[13]        "FOIA cases typically and appropriately are decided on
motions for summary judgment."  <u>Defs. of Wildlife v. U.S. Border</u>
<u>Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); <u>see also</u>, <u>Rimmer</u>
<u>v. Holder</u>, 700 F.3d 246, 255 (6th Cir. 2012); <u>Cooper Cameron</u>
<u>Corp. v. U.S. Dep't of Labor, Occupational Safety & Health</u>
<u>Admin.</u>, 280 F.3d 539, 543 (5th Cir. 2002); <u>Samahon v. F.B.I.</u>, 40
F. Supp. 3d 498, 502 (E.D. Pa. 2014).  This case is no
different.  On September 12, 2017, the Court held a status and
scheduling conference during which the Court explained that the
merits of Plaintiffs' FOIA requests would be resolved through
summary judgment.  <u>See</u> ECF No. 37 at 19.  The NTSB stated that
it had "completed its production" in this case, and that it had
asserted exemptions as it believed were appropriate.  <u>Id.</u>
Accordingly, the NTSB indicated that all issues in this case
could be resolved following briefing.  The NTSB filed a "Motion
for Summary Judgment," rather than a motion for partial summary
judgment; moreover, the NTSB's proposed order stated that the
case would be closed, should the Court find in favor of the
NTSB.  <u>See</u> ECF No. 51, Proposed Order.  Furthermore, despite
receiving clear notice from Plaintiffs that it had not briefed

On April 9, 2019, the Court granted relief to Plaintiffs by ordering the production of the wreckage and chain of custody documents.  ECF No. 56 ¶ 2.  The NTSB moved for reconsideration of the Order, arguing that the request for the wreckage and documents was not before the Court.  ECF No. 59.  The NTSB also argued that, in any event, FOIA requests do not concern physical evidence because those are agency records, and there were no chain of custody records that had not been produced.

The Court granted the NTSB's motion for reconsideration.  ECF No. 62.  As a threshold matter, the NTSB is incorrect in its assertion that the FOIA request was not before the Court.  See id.; ECF No. 16 ¶¶ 13, 123-38.  However, the NTSB is correct that the Court cannot order the production of the wreckage under the FOIA because it is not an agency record.  See ECF No. 62.  Furthermore, although the chain of custody records were the proper subject matter of Plaintiffs' FOIA request, Plaintiffs failed to respond to the NTSB's argument that all such records had been produced to Plaintiffs, belying the need for further production.  See id.

---

the Court about the wreckage or related documents, the NTSB failed to seek leave to file a reply brief addressing Plaintiffs' arguments.  In light of the foregoing, the Court finds that the merits of all of the issues raised by Plaintiffs are squarely before the Court and can be ruled on.

Additionally, whatever the merits of Plaintiffs'
arguments concerning their requests under 49 C.F.R. Part 837,
such claims were not before the Court.  See ECF No. 29-1 ¶¶ 146-
52 (erroneously seeking relief pursuant to "14 C.F.R. § 837.4");
ECF No. 46 (denying leave to file a Second Amended Complaint).

~~In the Amended Complaint, Plaintiffs included copies~~
~~of the correspondence concerning their request for the wreckage.~~
~~ECF No. 16 Exs. 8, 9, 11.  On July 12, 2016, Plaintiffs~~
~~requested "all wreckage components" from the Goldstein accident~~
~~"be immediately released for inspection."  Id. Ex. 8.~~
~~Plaintiffs specifically called out "rudder boost components" and~~
~~related pieces.  Id.  The NTSB responded on July 25, 2016, by~~
~~explaining that the requested pieces of wreckage had been either~~
~~"released to Air Salvage of Dallas" or "consumed by the post-~~
~~crash fire."  Id. Ex. 11.~~

~~Access to and the release of wreckage is governed by~~
~~49 C.F.R. § 831.12.  Under that regulation, only authorized~~
~~persons are permitted access to wreckage until the NTSB has~~
~~determined it has no further need for the wreckage.  49 C.F.R.~~
~~§ 831.12.~~

~~One cannot produce that which one does not have.  The~~
~~NTSB has stated that the requested wreckage was never or is no~~
~~longer in the NTSB's possession or control.  The NTSB stated~~
~~that its investigation was complete, that it no longer had~~

custody or control over any of the wreckage, and that wreckage
has been returned to the owner or Air Salvage of Dallas.
Therefore, the NTSB cannot now release the wreckage for
inspection.  However, to the extent the NTSB at some time did
have the wreckage pieces, the NTSB must have prepared chain of
custody records, and such records could be produced.

The NTSB has not challenged Plaintiffs' request for
chain of custody information.  Accordingly, the NTSB shall
provide all documents accounting for the custody of the wreckage
pieces.  Furthermore, although the NTSB did not challenge
Plaintiffs' request to inspect the Goldstein accident wreckage,
statements by the NTSB indicate that the agency has completed
its investigation, has no further need for the wreckage, and has
shipped the wreckage to the owner or Air Salvage of Dallas.  To
the extent the NTSB does have any pieces of wreckage still in
its possession, the NTSB must make the same available for
inspection.  But assuming the NTSB is correct, if Plaintiffs
need to inspect the wreckage, their remedy lies with seeking
access from the person or entity currently in possession of the
wreckage, whether that is Air Salvage of Dallas or another third
party.

**IV.    CONCLUSION**

The Court has reviewed the NTSB's <u>Vaughn</u> index and the withheld materials and finds that stated FOIA exemptions apply. The Court also finds that <u>it cannot order production of the Goldstein aircraft wreckage pursuant to the FOIA.  Finally, Plaintiffs have failed to show that they have not been provided with chain of custody records or that any such records have been withheld and could be ordered to be produced under the FOIA</u>~~the NTSB has provided no justification to withhold information regarding or the wreckage itself if the NTSB still has it~~. Accordingly, the Court will grant the NTSB's motion for summary judgment~~as to the documents and videos identified in the Vaughn index, but will also order the NTSB to produce chain-of-custody information about the wreckage or make the wreckage available for inspection~~.